

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 17, 2015**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RODNEY WAYNE WILSON and | § | CASE NO. 11-50396-RLJ-7 |
| DONNA LYNN WILSON, | § | |
| | § | |
| DEBTORS. | § | |

## <u>MEMORANDUM OPINION</u>

Custom Food Group ("CFG") objects to the trustee's proposed settlement agreement with Jonell McCulloch ("McCulloch"), the defendant in an associated adversary proceeding, *McDonald v. McCulloch*, No. 14-05019 (the "Adversary"). By the Adversary, Myrtle McDonald, the chapter 7 trustee, seeks to set aside the sale of a house in Ruidoso, New Mexico by the debtors, Rodney and Donna Wilson, to McCulloch as a fraudulent conveyance under §§ 544 and 548 of the Bankruptcy Code. McCulloch is Donna Wilson's mother.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## I.

The alleged facts that underlie the Adversary are simple.  On September 9, 2011, less than one month prior to filing for bankruptcy, the Wilsons sold a house—described as Lot 4, Block 8, COUNTRY CLUB ESTATES, Ruidoso, Lincoln County, New Mexico (the "Property")—to McCulloch for $130,000.  As stated, McCulloch is the mother of Donna Wilson.  Throughout the Wilsons' bankruptcy case, as well as the associated case of Texas Star Refreshments, LLC [Case No. 11-50367], CFG, the largest unsecured creditor of both the Wilsons and Texas Star, contended that the sale was a fraudulent transfer and pushed for the avoidance of the transfer.[1]  On September 25, 2014, the trustee initiated the Adversary by filing a complaint to avoid the transaction as a fraudulent conveyance, contending that the Property *has* a value of $189,216 [Adv. No. 14-05019, Doc. No. 1-1].

On January 26, 2015, the trustee filed her *Motion to Approve Settlement Agreement Between the Trustee and Defendant: Jonell Ruth McCulloch* [Doc. No. 334].  Under the proposed settlement, the trustee will receive $25,000, with mutual releases issued by the parties.  *Id.* at 3.  The settlement sum is to be paid by McCulloch *or* the debtors.  *Id.*  CFG says the settlement should be rejected, arguing that the trustee's estimated baseline value of $189,216 is at least $50,000 too low.  *See Objection of Custom Food Group L.P. to Plaintiff's Motion to Approve Settlement Agreement Between the Trustee and Defendant: Jonell Ruth McCulloch* [Doc. No. 336].

## II.

### A.

The Court considers approval of a settlement or compromise under Rule 9019(a).  Fed. R.

---

[1] In fact, the same day but before the trustee filed this avoidance action, CFG independently pursued the avoidance of the purchase and sale of the Property in the adversary proceeding *Custom Food Group v. McCulloch* [Adv. No. 14-05018], which the Court dismissed for lack of standing.  *See* Adv. No. 14-05018, Doc. Nos. 18 and 19.

Bankr. P. 9019(a). To gain approval, the settlement must be "fair and equitable and in the best interest of the estate." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995) (citing *U.S. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). In making this determination, the Court must "compare the 'terms of the compromise with the likely rewards of litigation,'" *Jackson Brewing*, 624 F.2d at 602, and is guided by the following factors:

> (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, including the difficulties, if any, to be encountered in the matter of collection; (3) the paramount interest of the creditors and a proper deference to their respective views; (4) the extent to which the settlement is truly the product of arm's-length bargaining and not fraud or collusion; and (5) all other factors bearing on the wisdom of the compromise.

*The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) (citing *Foster*, 68 F.3d at 917–18); *see also Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997).

In assessing the first factor, the Court considers the relevant facts and law to make an informed and intelligent decision. *See Cajun*, 119 F.3d at 356 (quoting *La Salle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)). Both CFG and the trustee agree that there is a likely probability of success in the litigation and that this is not, factually or legally, a complex case. At the hearing held on the motion, the trustee acknowledged that this is a "textbook" fraudulent transfer case; her disagreement with CFG concerns the value of the Property at the time of the sale. The trustee stated that, from her investigation, the tax value of the Property in 2011 was approximately $111,000, but by 2012, it had increased to $189,216, the value she used in the complaint. For purposes of the settlement, the trustee estimates that the present value of the Property is about $190,000. To determine the fair market value of the Property, the trustee

consulted with realtors and buyers of real property in Ruidoso, as well as the manager of the title company that closed the transaction between McCulloch and the debtors. She also obtained a summary appraisal from an appraiser in Ruidoso.

The trustee explained that, relative to the assets in the estate, a full-blown trial may prove costly for the estate. The trustee estimates that, assuming recovery and then sale of the Property for $190,000, the estate would ultimately recover approximately $25,000, the same amount as the settlement. This is a net amount that results after deductions for expenses incurred for holding, maintaining, and selling the Property. It also accounts for $130,000 of the sale proceeds to release the Property from a lien in McCulloch's favor as an ostensible good faith purchaser of the Property.[2] Specific costs mentioned that would reduce the estate's recovery include a ten percent commission to the realtor that conducts the sale of the Property, the cost of a mandatory connection to the public sewer system, and maintenance expenses on the Property for the time it is on the market pending its sale.

A trustee has some discretion in administering the estate. *See O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (citing *In re Indian Motorcycle, Inc.*, 289 B.R. 269, 283 (1st Cir. BAP 2003)) (explaining that the court may give weight to the trustee's opinion and that the trustee's business judgment plays a role in the settlement of a claim that is property of the estate).

The Court should consider the views of creditors; creditors' wishes are important in determining whether the settlement is fair and equitable, but they are not a veto. *Cajun*, 119 F.3d at 358 ("[I]t is established that the 'desires of the creditors are not binding.'" (quoting *Foster*, 68 F.3d at 917)). CFG represents the vast majority of the unsecured debt in the case. No other

---

[2] *See* 11 U.S.C. 548(c).

creditor affirmatively opposes the settlement. CFG contends that the proposed settlement is not in the best interests of creditors because the value of the Property at the time of the sale, it contends, was $250,000. This is obviously much higher than any estimate obtained by the trustee; CFG did not, however, provide the Court or the trustee with any basis for such value.

The fourth factor considers whether the negotiation was conducted at arms-length. This factor is not disputed by CFG, and there is no reason to question this.

CFG raises additional concerns that touch on the catch-all consideration—other factors bearing on the wisdom of the compromise. CFG contends that the trustee did not conduct sufficient due diligence concerning whether the amount paid was adequate and whether McCulloch actually paid anything at all. CFG contends that since the debtors may be funding the settlement, it suspects that the transfer from the Wilsons to McCulloch may have been a sham transaction.

**B.**

The avoidance action against McCulloch does not involve novel legal issues and should not cause a lengthy trial. The trustee provided the Court with an adequate explanation for her assessment of the current value of the Property and its associated expenses. CFG, on the other hand, did not explain why it believes that the value of the Property was $250,000 at the time of the sale.

The trustee pitches the settlement as, in effect, netting the estate as much as it would get after a successful trial, but without the expense of trial. If true, the *Jackson Brewing* factors are clearly satisfied. CFG did offer to guarantee a value that would net more than $25,000, but the Court will not accept such a promise as a basis for declining approval. The trustee is accorded some deference on the settlement. CFG has previously taken a position in this case that belies a motive to enhance its recovery or that of other creditors. *See Memorandum Opinion*, Case No. 11-

50396, Doc. No. 128 at 18–19.[3]

      The trustee's assumptions for the settlement are, with one exception, fair within the context of the settlement and its possible approval. The one problem area, however, accounts for a major part of the settlement. The trustee, without explanation, discounts the settlement amount by $130,000, the amount ostensibly paid upon the transfer by McCulloch. This is proper if McCulloch acquired the property in good faith for the $130,000. *See* 11 U.S.C § 548(c). There are warning signs, however. McCulloch is Donna Wilson's mother. Whether the $130,000 is fair value may be subject to debate, but one can easily suspect that McCulloch knew why the Wilsons were in need of money. There is also reasonable suspicion that the property will revert back to the Wilsons. These concerns are not relevant if McCulloch paid the $130,000 and such amount was fair value for the property. But if it is not, and if she did not take the property for the $130,000 *in good faith*, she is not entitled to the good faith defense, which is, in essence, the justification for discounting the settlement by the $130,000. The trustee offered no explanation or evidence on this important point. As such, the Court cannot approve the settlement. In declining approval, the Court is not saying that the trustee must proceed to trial. This ruling is made without prejudice to submission of another, or better justified, settlement proposal.

### End of Memorandum Opinion ###

---

[3] The Court, in considering confirmation of the chapter 11 plans of Texas Star Refreshments, LLC and the Wilsons, approved the separate classification—from other unsecured creditors—of CFG's claim. The Court found that the separate classification was proper because "CFG's objections and its vote disavow[ed] a sincere interest in collecting some or all of its claim." *Id*. at 19. Its vote against the plans was "for reasons other than its economic interest in the claim." *Id*. (quoting *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 174 (5th Cir. 2011)).